IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES POINDEXTER, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-172 |
| | ) | Judge Terrence F. McVerry/ |
| COMMONWEALTH OF PA; MR. TOM | ) | Magistrate Judge Amy Reynolds Hay |
| CORBETT, The Attorney General of the | ) | |
| State of Pennsylvania, | ) | |
| | ) | |
| Respondents | ) | |

REPORT AND RECOMMENDATION

I.      Recommendation

It is respectfully recommended that the petition filed pursuant to 28 U.S.C. § 2254 be

dismissed as time barred and/or as procedurally defaulted and that a certificate of appealability be

denied.

II.     Report

On June 21, 1994, Charles Poindexter ("Petitioner"), appearing with counsel, entered a

negotiated plea of guilt to third degree murder and robbery.  Waiting more than ten years after his

conviction was deemed to become final, he signed the current Section 2254 habeas petition on

January 30, 2008.  Because his petition is time barred it should be dismissed.  Alternatively,

because either 1) the issues he raises in this habeas petition were never raised in the state courts

or 2) because he failed to file a Petition for Allowance of Appeal ("PAA") during his first PCRA

proceedings and because his subsequent two PCRA petitions were held to be time barred, he has

procedurally defaulted all of his issues, and the habeas petition should be dismissed as

procedurally defaulted.

It is difficult to determine exactly what issues Petitioner is attempting to raise herein

because the issues listed in his habeas petition are not phrased exactly as the issues he raises in

his Memorandum of Law in support of his habeas petition. Because the issues raised in the

memorandum of law are explained and argued more fully than are the issues listed in the habeas

petition and consequently, the Respondents addressed those issues raised in the memorandum

without objection by Petitioner in the traverse, we too will directly address the issues raised and

argued in the memorandum. Those issues are as follows:

> I - WHETHER EVERY ELEMENT OF CHARGES AGAINST PETITIONER
> WAS ESTABLISHED IN ACCORDANCE WITH DUE PROCESS
> PROCEDURES.
> II - WHETHER COURT RECORDS WILL REFLECT PETITIONER WAS
> ADVISED IN "NO UNCERTAIN TERMS" OF THE CHARGES AGAINST
> HIM AND WERE THESE CHARGES "UNDERSTOOD" TO THE POINT
> PETITIONER COULD ENTER A PLEA AGREEMENT PURSUANT TO
> BRADSHAW V. STUMPF, 125 S.Ct. 2398, 545 US 175 (US 2005).
> III - WHETHER PETITIONER'S PLEA AGREEMENT EXCEEDED
> SENTENCING GUILDLINES [sic] IN ACCORDANCE TO PETITIONER'S
> PRIOR RECORD SCORE.
> IV - WHETHER [the Trial] COURT'S PARTICIPATION IN PLEA
> AGREEMENT [was] A VIOLATION OF DUE PROCESS REQUIREMENTS
> PURSUANT TO F.R.CRIM.P. RULE 11.
> V - WHETHER PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF
> COUNSEL OR LACK OF COUNSEL AT CRUCIAL STAGES OF COURT
> PROCEEDINGS.
> VI - WHETHER MISSCARRIAGE [sic] OF JUSTICE OCCURRED AND
> PETITIONER WAS PREJUDICED RESULTING FROM BREAKDOWN IN
> JUDICIAL ADVERSARY PROCESS.

Dkt. [7] at 5.[1] As will become apparent from the recitation of the procedural and factual history

---

[1] The issues raised in the actual habeas petition itself were as follows:

GROUND ONE: A violation of due process and fair & IMPARTIAL processing. . . . .
[where a] bill of particulars or Indictment is void of [the] robbery charge brought on the
very day of guilty plea which denied opportunity to contest charge and their [sic] was no
adequate notice to prepare to contest charge, and the robbery was not on the original
indictment.

Dkt. [4] at 5, This is the same issue as Issue I in the memorandum of law. See Dkt. [5] at 6 ("in this case
(continued...)

of this case, these issues were either never raised in the State Courts or were waived under State

law for Petitioner's failure to comply with procedural requirements of State law, such as failing

to file a PAA and/or failing to comply with the PCRA statute of limitations.

---

[1](...continued)
there was never an indictment for the charge of robbery. . . . It was amended the same day of the plea
agreement proceedings whereby prejudicing defendant with last minutes [sic] additions.").

> GROUND TWO: GUILTY PLEA UNLAWFULLY INTRODUCED WHERE ADDED
> CHARGE OF ROBBERY ABSENT FROM INDICTMENT MAKE IT LIKELY PLEA
> WOULD [not] HAVE BEEN ENTER[ED] INTO. . . . ADDITIONALLY BEFORE
> GUILTY PLEA CAN BE ACCEPTED ON ANY CHAR[G]E THE LAW REQUIRES
> COMPLETE EXPLAINATION [sic] OF EVERY ELEMENT OF CRIME CHARGED[]
> IN understandable terms INvolving [sic] all[ ] of crimes charge[d] . . . .

Dkt. [4] at 6 to 7.

This issue, construed as an attack on Petitioner's understanding of the crimes he was charged with, is the
same as Issue II raised in the Memorandum. Dkt. [5] at 7 ("Petitioner alleges that where a defendant
pleads guilty to a crime without having been informed of the crime[']s elements a due process violation
has occurred.  In this instant case, the elements of robbery was [sic] never explained to him.").

> GROUND THREE: the sentence that petitioner received was outside the sentencing
> guidelines . . . .

Dkt. [4] at 8.   This issue is phrased almost exactly the same in the Memorandum of law.

> GROUND FOUR: THE PARTICIPATION OF TRIAL JUDGE IN PLEA BARGAIN
> VIOLATED DUE PROCESS . . . .

Dkt. [4] at 11.  This issue is phrased almost identically in the Memorandum.

> GROUND 5: INEFFECTIVE ASSISTANCE OF COUNSEL.

Dkt. [4] at 12.  This issue is identical to the issue in the Memorandum.

> GROUND 6: MISCARRIAGE OF JUSTICE IN THE PROCUDURE [sic] IN[] WHICH
> THE DEFENDANT WAS SENTENCED.

Dkt. [4] at 13.  This issue is identical to the issue in the Memorandum.

A. <u>Factual and Procedural History</u>

The following factual history is taken mostly from the Respondents' Answer.

On June 21, 1994, Petitioner appeared before the Honorable Paul F. Lutty, Jr. and entered a guilty plea. Petitioner was represented by Attorney Sumner Parker. Pursuant to a negotiated plea agreement, it was agreed that appellant would not object to the addition of the robbery charge being added to the Information at CC 199311945 and he would waive his preliminary hearing and arraignment on the new robbery charge; the grading of the criminal homicide would be set at third-degree murder; and Petitioner would plead guilty to all charges and would receive an aggregate sentence of eighteen (18) to forty (40) years imprisonment. Immediately following acceptance of the plea, the court sentenced Petitioner in accordance with the terms of the agreement to a period of ten (10) to twenty (20) years incarceration for third-degree murder, and to a consecutive term of eight (8) to twenty (20) years for the robbery charge. No direct appeal was filed.

On or about April 5, 1995, Petitioner, acting pro se, filed a petition pursuant to the Post Conviction Relief Act (PCRA). Attorney David Defazio was appointed to represent Petitioner. Petitioner then filed an Amended PCRA petition through Attorney Defazio, raising the following claim of ineffective assistance of trial counsel, arguing that Petitioner's plea was not knowing and voluntarily made because:

> I. The record indicates that petitioner's guilty plea colloquy does not contain a complete review of Petitioner's trial, sentencing or appeal rights nor does it contain Petitioner's admission of guilt. Although Petitioner's written guilty plea colloquy reviews all of these matters, it was not made a part of the record. Also, the Assistant District Attorney's summary of the evidence was insufficient to establish the elements for the charge of robbery.

Dkt. [15-3] at 10. On June 20, 1996, Judge Lutty issued a Notice of Intent to Dismiss

petitioner's Amended PCRA Petition.  On July 5, 1996, Judge Lutty dismissed the petition.

Petitioner, through Attorney Defazio,[2] filed a Notice of Appeal on July 26, 1996. On July

10, 1997, Judge Lutty filed his Opinion.  Dkt. [15-4] at 10 to 20.

On or about October 23, 1997, Petitioner, through Attorney Defazio, filed his brief in the

Superior Court of Pennsylvania, raising the following claims:

> I. Whether the post conviction Court erred when it dismissed
> Appellant's PCRA petition without first granting a hearing to
> determine whether appellant's constitutional rights to a fair trial
> due [sic] was violated by trial counsel's failure to insure that
> Petitioner's Guilty plea was knowingly and voluntarily given.

Dkt. [15-4] at 32.   On February 4, 1998, the Superior Court affirmed the judgment of the Court

of Common Pleas of Allegheny County.  Dkt. [15-5] at 14 to 19.   Petitioner did not file a PAA

in the Pennsylvania Supreme Court.

On or about March 17, 1998, Petitioner, acting pro se, filed a Petition for Writ of Habeas

Corpus.   On that same date, Petitioner filed a Brief in Support of Petition for Writ of Habeas

Corpus.  The two issues raised in the brief were as follows:

> 1.  WHETHER APPELLATE [i.e., PCRA] COUNSEL, DAVID J. DEFAZIO,
> WAS INEFFECTIVE FOR FAILURE TO FILE AN ADEQUATE AMENDED
> [PCRA] PETITION?
> 2.  WHETHER TRIAL COURT'S PRE-PLEA EXAMINATION WAS
> DEFICIENT SINCE IT FAILS TO ELICIT THE INFORMATION REQUIRED
> BY RULE 319 (a), THAT PETITIONER UNDERSTOOD THE NATURE OF
> THE CHARGES TO WHICH HE WAS PLEADING GUILTY.

Dkt. [15-5] at 28.  By order dated May 13, 1998, Judge Lutty denied the petition.

Petitioner, acting pro se, filed a Notice of Appeal on July 9, 1996.  On August 26, 1998,

Judge Lutty filed his Opinion.  Dkt. [15-6] at 1 to 2.  On or about November 10, 1998, Petitioner,

---

[2]  The Commonwealth's Answer incorrectly identifies Petitioner's attorney for the first PCRA as
"Mr. O'Toole."  Dkt. [15] at 3.  In fact, Petitioner's attorney for the first PCRA proceedings in both the
trial Court and appellate Court was Mr. Defazio.

acting pro se, filed his brief in the Superior Court of Pennsylvania, raising the following claims:

> 1. [W]hether the post conviction court erred when it dismissed appellant's pcra petition without first granting a hearing to determine whether appellant's constitutional right to a fair trial due [sic] was violated by trial counsel's failure to insure that petitioner's guilty plea was knowingly and voluntarily given.

> 2. Whether appellant was aware of the nature of charges at his guilty plea hearing.

Dkt. [15-6] at 14. On March 17, 1999, the Superior Court affirmed the judgment of the Court of Common Pleas of Allegheny County. Dkt. [15-6] at 26 to 29. Petitioner did not file a PAA.

On or about April 11, 2000, Petitioner filed a third PCRA petition. Dkt. [15-6] at 30 to 37. For some unexplained reason, that petition was not in the Common Pleas Court files, and, after a delay of some two years where the third PCRA petition was not acted upon by the Court, Petitioner sent a letter to the Court, which prompted the Court to write back, explaining that the Court did not have his third PCRA petition. Dkt. [15-6] at 38. By Order of Court dated October 17, 2002, Judge Lutty appointed Attorney Kenneth Snarey to represent Petitioner in filing an Amended PCRA petition. On or about April 31, 2004, Attorney Snarey filed a Motion for Leave to Withdraw as Counsel pursuant to Commonwealth v. Turner and Commonwealth v. Finley. Dkt. [15-7] at 1 to 6. On that same date, Attorney Snarey filed a Brief in Support of his motion. Dkt. [15-7] at 7 to 29. By Order of Court dated August 16, 2005, Judge Lutty dismissed petitioner's PCRA petition on the basis of Attorney Snarey's no-merit letter. Dkt. [15-7] at 31.

On or about August 30, 2005, Petitioner, acting pro se, filed a Notice of Appeal. On July 13, 2006, Judge Lutty filed his Opinion Dkt. [15-8] at 8 to 9. On or about January 29, 2007, Petitioner, acting pro se, filed his brief, raising the following claims:

> 1. Whether trial and appellate [i.e. PCRA] counsel failed to render constitutionally effective assistance infecting the entire trial so that the resulting conviction and direct appeal was violative of petitioner's right to effective assistance of counsel and due process of law under the federal and state constitution denying petitioner a fair trial.

6

2. Whether the PCRA Court erred in denying defendant's post conviction relief without holding an evidentiary hearing on defendant's post-conviction claims of trial counsel effectiveness.

Dkt. [15-8] at 23. On May 8, 2007, the Superior Court affirmed the judgment of the Court of Common Pleas of Allegheny County. Dkt. [15-8] at 42 to 50. Petitioner did not file a PAA.

Petitioner signed the within Federal Habeas Petition on January 30, 2008. Dkt. [4]. The Respondents filed their Answer, Dkt. [15], raising inter alia, the fact that the petition is time barred and, alternatively, that all the issues raised are procedurally defaulted. After being granted an extension of time, Petitioner filed a traverse. Dkt. [21].

B. Applicable Legal Standards

1. AEDPA is applicable

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because petitioner's habeas petition was filed in the year 2008, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000) ("Since Werts filed his habeas petition on March 18, 1997, after the effective date of the AEDPA, we are required to apply the amended standards set forth in the AEDPA to his claim for federal habeas corpus relief.") (footnote omitted).

2. Statute of Limitations

As applicable here, AEDPA required Petitioner to file his habeas petition within one year of the following enumerated events:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    . . . .

7

(2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Even though a habeas respondent has the burden to plead affirmatively AEDPA's statute of limitations, Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002), it is appropriate, where, as here, the habeas petitioner has been put on notice of a statute of limitations defense, to place some burden on him to show why the statute of limitations has not run. See, e.g., Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("once a petitioner is given adequate notice and opportunity to respond to allegations that his petition is subject to dismissal pursuant to AEDPA's statute of limitations, petitioner has the burden of providing an adequate response"), *abrogation on other grounds recognized in*, Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir. 2007); Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002).   As is demonstrated below, Petitioner has failed to carry his burden to show that the AEDPA statute of limitations has not run.

C.  Discussion

The Respondents contend that the instant petition is untimely because it was not filed within the one year AEDPA statute of limitations.  The Respondents are correct.

Petitioner was convicted on his guilty plea on June 21, 1994.  Because Petitioner filed no post sentence motion and took no appeal from the imposition of the sentences, Petitioner's conviction became final 30 days after June 21, 1994, which is July 21, 1994.  See, e.g.,  Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); Kapral v. United States, 166 F.3d 565, 575, 577 (3d Cir. 1999); Woolfolk v. Mechling, No. Civ.A. 02-7211, 2003 WL 22837608, at *4  (E.D. Pa. Nov. 25, 2003)("Direct review of Petitioner's conviction ended on November 20, 1998, since

Petitioner did not appeal his guilty plea within thirty days of the sentencing."). Because his conviction became final before the enactment of AEDPA, his conviction is deemed to have become final on the effective date of AEDPA, i.e., April 24, 1996, and he had one year from that date in which to file his habeas petition, i.e., by April 24, 1997. See Burns v. Morton, 134 F.3d 109, 1112 (3d Cir. 1998) (establishing a one year grace period after AEDPA's enactment date and holding that where convictions became final before April 24, 1996, the effective date of AEDPA, habeas petitions filed within one year thereof come within AEDPA's one year statute of limitations). The Court of Appeals explained the effect of its holding in Burns v. Morton is to "make . . . all other convictions in this circuit otherwise final before the effective date of the AEDPA, April 24, 1996, final on that day for purposes of calculating the limitations period." United States v. Duffus, 174 F.3d 333, 334 (3d Cir. 1999). Petitioner is not deemed to have filed the current petition until, at the earliest, January 30, 2008, the date whereon he signed his habeas petition.[3] This is more than ten years after his conviction is deemed to have become final. Hence, absent tolling, Petitioner is time barred.

It is true that a properly filed post conviction or collateral petition that was filed and/or pending would have tolled the running of the limitations grace period.[4] Petitioner filed his first

---

[3]    The "prisoner mail box rule" provides that "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court." Burns v. Morton, 134 F.3d at 113; United States v. Soto, 159 F.Supp.2d 39, 45 (E.D. Pa. 2001), aff'd, 33 Fed.Appx. 40 (3d Cir. 2002). In the present case, the petition was executed on January 30, 2008 and it was received by the District Court on February 6, 2008. As such, it appears that Petitioner delivered the petition to prison officials sometime between January 30, 2208 and February 6, 2008. Absent proof of the exact date of delivering the petition to the prison authorities, the court will treat January 30, 2008, the date whereon Petitioner signed his petition, as the filing date. See Henshaw v. Commissioner, Dept. of Correction, No. 99-848-SLR, 2000 WL 777868 (D. Del. June 8, 2000). See also Rhodes v. Senkowski, 82 F.Supp.2d 160, 165 (S.D.N.Y. 2000)("Absent evidence to the contrary, the Court assumes that Rhodes gave his petition to prison officials for mailing on the date he signed it, February 9, 1998.").

[4]    See 22 U.S.C. § 2244(d)(2); Bennet v. Artuz, 199 F.3d 116, 119-22 (2d Cir. 1999), aff'd, 531

(continued...)

PCRA petition on or about April 5, 1995 and that petition remained pending only until March 6, 1998, i.e., thirty days after February 4, 1998, which is the date whereon the Superior Court affirmed the denial of relief. Hence, the AEDPA one year grace period remained tolled until March 6, 1998. Swartz v. Meyers, 204 F.3d 417, 420 (3d Cir. 2000) (the one year limitation period continues to be tolled during the period permitted by state law for the taking of a timely appeal from the denial of post-conviction relief even if no appeal is taken).

Then just nine days later, on March 17, 1998, Petitioner filed a pro se state habeas corpus petition, which the trial court denied on May 13, 1998. Petitioner filed a pro se appeal. On March 17, 1999, the Superior Court, pursuant to governing State law, treated the state habeas corpus petition as Petitioner's second PCRA petition and found it to be time barred. Dkt. [15-6] at 27, Superior Court Memorandum Op., ("Because the PCRA at 42 Pa.C.S. § 9542 subsumes the remedy of *habeas corpus*, we treat the petition for *habeas corpus* as a PCRA petition. . . . . Because Poindexter's second petition for collateral relief was filed beyond the time limits of 42 Pa.C.S.A. §9545(b)(1), we find the petition time-barred."). Petitioner did not file a PAA.

Moreover, because the State Courts found this state habeas petition, treated as a second PCRA petition, to be time barred, the State habeas corpus petition treated as a PCRA petition cannot qualify as a "properly filed" motion for post collateral relief, within the meaning of AEDPA, and so, cannot serve to statutorily toll AEDPA's statute of limitations. Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005)(if state finds the post conviction petition untimely filed, it is not "properly filed" for AEDPA's statutory tolling provision). Accordingly, from March 7, 1998 (i.e., the first full day that Petitioner's first PCRA petition was no longer pending and

---

[4](...continued)
U.S. 4 (2000); Israfil v. Russell, 276 F.3d 768, 771 (6th Cir. 2001)("This one-year grace period is tolled by any time spent pursuing properly filed state post-conviction or other collateral review proceedings.").

hence, the AEDPA statute of limitations was no longer tolled) until March 17, 1999 (i.e., the date

the Superior Court affirmed the denial of relief in Petitioner's state habeas petition treated as his

second PCRA petition), a total of 375 days were consumed. Hence, as of March 17, 1999,

Petitioner had utilized 10 days more than the allotted 365 days of AEDPA's one year grace

period.

Waiting for more than one year after his second PCRA petition was finally decided by the

Pennsylvania Superior Court, Petitioner filed yet a third PCRA petition on or about April 11,

2000. Hence from March 17, 1999 until April 11, 2000, an additional 391 days were used up.

Adding these 391 days to the 375 days already used up yields a result of 766 days. The third

PCRA petition is deemed to have been pending only until June 7, 2007, which is thirty days after

May 8, 2007, which is the date whereon the Superior Court affirmed the denial of relief, finding

that "Appellant's petition is patently untimely, and we therefore are precluded from considering a

challenge to the sentence imposed." Dkt. [15-8] at 49. Again, because the State Superior Court

found this third PCRA petition to be time barred, it cannot statutorily toll any of AEDPA's

statute of limitations for at least two independent reasons. First, as noted above, an untimely

filed PCRA petition cannot qualify as a properly filed petition for post conviction relief within

the meaning of AEDPA. Pace v. DiGuglielmo. Second, because AEDPA's one year limitations

had already run long before Petitioner filed the third PCRA petition, there was nothing left to be

tolled. Johnson v. Hendricks, 314 F.3d 159, 161-62 (3d Cir. 2002)("§ 2244(d)(2)'s tolling

provision excludes time during which a properly filed state post-conviction is pending but does

not reset the date from which the one-year limitations period begins to run")(citing Smith v.

McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)). Accordingly, from April 11, 2000, (the date

whereon Petitioner filed his third PCRA petition and the last date we counted against the

AEDPA statute of limitations) until June 7, 2007 (the date whereon his third PCRA petition is no longer deemed to be pending) a total of 2613 days were used up. Adding these 2613 days to the 766 days already used up (as calculated above) yields a result of 3379 days that Petitioner utilized up to this point in the proceedings. However, we are not finished counting.

Even after June 7, 2007 (i.e., the thirty days after the State Superior Court denied Petitioner relief on his third PCRA petition), when we shall deem that third PCRA petition no longer pending, Petitioner waited until January 30, 2008 to sign his current Section 2254 habeas petition. Hence from June 7, 2007 until January 30, 2008, an additional 237 days were used up. Adding those 237 days to the 3379 days that Petitioner previously used up, yields a result of 3616 days or 3251 days beyond the 365 days allotted by AEDPA. In other words, the instant petition was filed more than 8 years beyond the one year permitted by AEDPA.

Petitioner is clearly time barred absent some equitable tolling. Despite the fact that Petitioner does not argue for equitable tolling for the time during which his untimely filed PCRA petitions were pending, even if we equitably tolled the pendency of the third PCRA petition, i.e., from April 11, 2000 to June 7, 2007, i.e., a total of 2613 days, that would still leave a total of 1003 (= 3616 minus 2613) days utilized. Moreover, even if we equitably tolled the pendency of the state habeas petition treated as a second PCRA petition, i.e., from March 17, 1998 (the date of filing the state habeas/second PCRA petition) to April 16, 1999 (thirty days after the Superior Court denied the second PCRA petition as untimely), i.e. a total of 395 days, that would still leave a total of 608 days (=1003 days minus 395 days).

Hence, absent any additional equitable tolling, Petitioner would still be time barred.

It is a federal habeas petitioner's burden to show entitlement to equitable tolling. See, e.g., Polk v. Cain, No. Civ. A. 00-3026, 2001 WL 736755, at *9 (E.D. La. June 23, 2001)("A

12

person seeking the tolling of the statute of limitations period has the burden of showing circumstances exist that justify tolling."); Balagula v. United States, 73 F.Supp.2d 287, 291 (E.D.N.Y. 1999)("The burden lays with the petitioner to establish the entitlement to equitable tolling."); Turner v. Singletary, 46 F.Supp.2d 1238, 1243 (N.D. Fla. 1999)("The burden is upon the petitioner to show that equitable tolling is warranted."). Put succinctly, a habeas petitioner, seeking to invoke the doctrine of equitable tolling, must establish two requisites: 1) the existence of "extraordinary circumstances" which prevented him from filing in a timely manner and 2) that he acted with reasonable diligence. Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."), *reh'g and suggestion for reh'g en banc denied*, 207 F3d 666 (11th Cir. 2000). See also Lacava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005)("Equitable tolling is appropriate . . . such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition ***and*** the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims.").

Petitioner has not carried his burden to show entitlement to equitable tolling. While it does not appear that Petitioner explicitly argues for equitable tolling in his memorandum of law, he does appear to argue for such in his actual habeas petition. Dkt. [4] at 15 ("petitioner has been trying to obtain trial [i.e, guilty plea] transcripts to argue his conviction that is the extraordinary circumstance that stood in his way and should be allowed equitable tolling"). In the habeas petition itself, Petitioner alleges no facts in support of this argument for equitable tolling, however in a portion of his traverse, dedicated to showing "cause and prejudice," Petitioner argues that his "inability to raise his issue(s) in one appeal was <u>caused</u> by petitioner['s] incapacity

to obtain the trial transcript [i.e, guilty plea transcript] which petitioner diligently sought to retrieve by numerous request[s] to appropriate authorities [()see numerous requests for trial transcripts attached hereto as Exhibits 1,2 and 3[),] petitioner did not receive the transcripts until May 31, 07 and after he filed his initial appeal." Dkt. [21] at 7.

There are several problems with Petitioner's contentions. The record affirmatively rebuts the underlying premise of Petitioner's argument herein for equitable tolling. He implies that he could not file or, perhaps, more accurately, could not **properly** file, any appeal or PCRA petition or perhaps, even the present habeas petition, without those transcripts. However, if Petitioner is to be believed in his claim that he did not receive those transcripts until May 31, 2007, we note that by that time, he had already filed three pro se post conviction petitions in the State Courts. Hence, his underlying premise that without the transcripts he could not have filed or properly filed his petitions to attack his conviction is affirmatively disproved by the record.

Moreover, he makes no connection between the need for the transcripts and the ability to file his habeas petition in a timely fashion. We note that Petitioner was present at the guilty plea proceeding and he fails to explain why his presence for the proceeding was not sufficient to enable him to timely file. Lloyd v. Van Natta, 296 F.3d 630, 633-34 (7th Cir. 2002) (per curiam) (Petitioner not entitled to equitable tolling due to lack of trial transcript where petitioner "was present at trial and knew the basis on which he could have asserted [his habeas claims]."); Jihad v. Hvass, 267 F.3d 803, 806 (8th Cir. 2001) ("[L]ack of access to a trial transcript does not preclude a petitioner from commencing post-conviction proceedings and therefore does not warrant equitable tolling."). Nor is there any dispute that both his counsel for the first PCRA petition, i.e., Attorney Defazio, and his counsel for the third PCRA petition, i.e., Attorney Snarey, possessed the transcript. Petitioner never alleges that he attempted to retrieve the

transcripts from Attorney Defazio.  He does show that he requested such of Attorney Snarey and

that Attorney Snarey provided him the transcript under cover of letter dated May 31, 2007.  Dkt.

[21-2] at 2.   Petitioner does not inform the Court of when he made this request.  Nor does he

explain why he could not have made this request earlier than he did.  Hence, Petitioner has

shown lack of diligence in attempting to retrieve the transcripts when he does not even allege that

he attempted to retrieve the transcripts from his first PCRA attorney, Mr. Defazio, or when he

began to request the transcript from Attorney Snarey.

Furthermore, for all the record shows, Petitioner's mere lack of transcripts simply cannot

explain or excuse the extremely long delay in his filing the current habeas petition.  Even if we

assume it were true, that Petitioner could not have raised all the issues he wanted to in the habeas

petition without the transcript, there is no explanation as to why he could not have filed a bare

bones Section 2254 petition and then explained to the Court his need for the transcript and, after

resolving such, he could then have filed an amended habeas petition.  See, e.g., Sullivan v.

Federal Bureau of Prisons, Civ.A. No. 06-cv-01477, 2008 WL 3285153, at *5 (D.Colo. May 2,

2008) wherein the court reasoned as follows:

> The court further finds that equitable tolling is not warranted based upon
> the time it took petitioner to obtain some state court transcripts from the court
> stenographer, namely, transcripts of a June 19, 2000, motion hearing, and the
> transcript of an April 20, 2000, proceeding. (Docket No. 15 at 9). Petitioner has
> not specifically shown how not having these transcripts impeded his ability to file
> his federal habeas petition . . . .  "[A]n inmate's lack of state court records does not
> justify equitable tolling." *Owings v. Jones*, 2007 WL 1188307, *3 & n. 8 (10th Cir.
> Apr. 19, 2007) (*citing United States v. Banuelos-Munoz*, 182 F.3d 933, 1999 WL
> 314616, *2 (10th Cir.  May 19, 1999) (disallowing equitable tolling based on
> obstacles faced by petitioner in obtaining a transcript in part because the facts
> supporting his claims had not depended on the transcript); *West v. Kaiser*, 7 Fed.
> Appx. 821, 823 (10th Cir. Mar. 6, 2001) (holding that a delay in obtaining
> transcripts did not justify equitable tolling because the petitioner had not
> demonstrated how unavailability of the materials delayed the filing of a habeas
> petition); *United States v. Pedraza*, 166 F.3d 349, 1998 WL 802283 (10th Cir.
> 1998) (holding that a federal prisoner was not entitled to equitable tolling of the

> limitations period in 28 U.S.C. § 2255 based on the unavailability of a
> transcript)); *Clark v. Oklahoma*, 2006 WL 62843, *4 (W.D.Okla. Jan.10, 2006)
> (same).

See also  Dolphin v. Garraghty, 27 Fed.Appx. 496, 499 (Ralph, J., concurring) ("Dolphin

received the papers on February 8, 1999, and could have filed his habeas petition before the

statute of limitations expired on March 3, 1999, even if he later felt he should amend his petition

to better state his case."); Escamilla v. Walls, 2004 WL 1718657, at *5 (N.D. Ill. July 30,

2004)("Escamilla had an independent obligation to meet the filing deadline, even if he did not

have access to all of his documents. At the very least, he could have filed his habeas corpus

petition by the one-year deadline and requested leave to amend at a later date. Instead, he

remained silent while he waited for his documents for two years. Thus, the loss of his documents

is not an appropriate reason to toll the statute of limitations."), *aff'd*,426 F.3d 868 (7th Cir. 2005).

Accordingly, his petition should be dismissed as being time barred.

It is also possible that by invoking the alleged lack of transcripts, Petitioner, rather than

arguing for equitable tolling, is, in fact, arguing for the AEDPA statute of limitations to be

calculated from a date other than the date his conviction became final.  He may in fact be arguing

that the AEDPA statute of limitations should be calculated from the date he actually received his

transcripts, i.e., from May 31, 2007.  Petitioner could be arguing for the application of 28  U.S.C.

§ 2244(d)(1)(B), which provides that the AEDPA statute of limitations may be calculated as

starting from "the date on which the impediment to filing an application created by State action

in violation of the Constitution or laws of the United States is removed, if the applicant was

prevented from filing by such State action[.]" 28 U.S.C. § 2244(d)(1)(B).

There are at least two problems with this argument.   The first problem is that, as

explained above, Petitioner utterly fails to explain how, despite having filed three PCRA

petitions without the transcript (all three of which were originally filed pro se), he can now maintain that he somehow needed those transcripts in order to file his habeas petition and that without them he could not have filed it. Cf. Neuendorf v. Graves, 110 F. Supp.2d 1144, 1153 (N.D.Iowa 2000) ("the petitioner's filing of a petition for habeas relief [or in the Petitioner's case his filing of the two pro se PCRA petitions] before the alleged impediment was lifted suggests that the state action did not prevent the petitioner from timely filing the action"). Moreover, even if he could establish that the absence of transcripts did in fact prevent him from filing or, perhaps more accurately, from properly filing his PCRA petitions, he utterly fails to show how the absence of those transcripts impeded his filing of his current federal habeas petition in a timely manner. See, e.g., Gauthier v. Higgins 175 Fed.Appx. 174, 176 (10th Cir. 2006)("Contrary to Gauthier's assertions, his alleged inability to pay for the transcripts did not constitute an 'impediment to filing' an application for federal habeas relief within the meaning of § 2244(d)(1) (B)").

The second problem is, even if we were to assume that the State's failure to provide the transcripts to Petitioner at the time he requested such, constituted an "impediment to filing an application created by State action" within the meaning of Section 2244(d)(1)(B), it cannot be said that the failure to provide him such a transcript constituted "State action in violation of the Constitution or laws of the United States" as is required to qualify under Section 2244(d)(1)(B). See, e.g., Crawford v. Costello, 27 Fed.Appx. 57, 59 (2d Cir. 2001)(" Nor does Crawford have any basis upon which he can claim that AEDPA's statute of limitations should be tolled. Under 28 U.S.C. § 2244(d)(1)(B), the statute of limitations may be tolled during the time that a state-created unconstitutional impediment prevents the petitioner from filing a petition. Because there is no constitutional right to a trial transcript for collateral appeals, the state's denial of his

request for a transcript did not constitute an unconstitutional impediment sufficient to toll the statute of limitations. *See, e.g., United States v. MacCollom*, 426 U.S. 317, 323-24 (1976); *Crossley v. United States*, 538 F.2d 508, 509 (2d Cir. 1976).").  Nor has Petitioner pointed to any United States statutory law that would require the State to provide Petitioner with transcripts to pursue State collateral review.

Accordingly, the statute of limitations should be calculated from the date his conviction is deemed to become final, i.e., April 24, 1996 (i.e., the start of the grace period) and his habeas petition should be dismissed as time barred.

Alternatively, all of the issues raised herein have been procedurally defaulted based upon several different procedural defaults.  First, it does not appear to this Court that Petitioner raised in the state courts the same issues, based upon the same facts, that he raises in the instant petition.  To the extent that he did not, then the issues raised in the habeas petition are procedurally defaulted for never having been raised in the state courts.  See, e.g., Herring v. Secretary, Dept. of Corrections, 397 F.3d 1338, 1343 (11th Cir. 2005)(a "procedural default arises in two situations: (1) where the state court itself correctly applies state law procedural bar principles to conclude a federal claim is barred; and (2) where a claim was never raised in state court, and it is clear the unexhausted claim would now be barred under state law procedural bar principles."); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998)(habeas petitioner's challenges to imposition of death penalty in his case and in Virginia generally were procedurally defaulted, where two such claims were never raised in state court); O'Guinn v. Dutton, 88 F.3d 1409, 1454-55 (6th Cir. 1996)("O'Guinn never raised any of these claims on direct appeal or in any of his post-conviction motions. The Tennessee Post-Conviction Procedures Act contains a three-year statute of limitations period for filing claims that were clearly available to the petitioner during

18

that time period. . . . Because of his failure to raise timely these claims, no state post-conviction

remedy is available in which to raise them now. . . . Under *Teague* and *Wainwright v. Sykes*, 433

U.S. 72 (1977), O'Guinn is barred from raising these claims unless he can show both cause for

the default and prejudice resulting from it."); Felts v. Tennis, Civ. A. No. 07-2035, 2008 WL

2954660, at *6 (E.D.Pa. July 30, 2008). ("In general, if the state court did not consider a claim

because the prisoner did not raise it, it is considered procedurally defaulted and a federal court

may not review it.").  Here, Petitioner could not go back to state court now because any PCRA

petition now filed would be time barred.  Hence, any issues raised herein that were not presented

to the state courts are procedurally defaulted.

To the extent that any of the issues raised herein are the same as the issues which he

raised in state court, those issues have been procedurally defaulted for several reasons.  To the

extent that the issue raised in the first PCRA petition is the same as any issue currently raised, it

has been procedurally defaulted because Petitioner never filed a PAA in the Supreme Court

raising the issue.  At the time, such failure to file a PAA constituted a procedural default.

The general rule is that a federal habeas petitioner must properly present his claims in a

request for discretionary appeal to the state's highest court or be procedurally defaulted in federal

court for failing to do so.  See Boerckel v. Sullivan, 526 U.S. 838, 848-49 (1999) ("Our

disagreement with Justice Stevens in this case turns on our differing answers to this last question:

Whether a prisoner who fails to present his claims in a petition for discretionary review to a state

court of last resort has properly presented his claims to the state courts.   Because we answer this

question 'no,' we conclude that Boerckel has procedurally defaulted his claims."); Mattis v.

Vaughn, 128 F.Supp.2d 249, 263 (E.D. Pa. 2001)("because petitions for allowance of appeal to

the Pennsylvania Supreme Court must be filed within thirty days after the entry of a final order of

the Superior Court, Mattis's <u>Brady</u> claim would now be procedurally barred.  <u>See</u>  Pa. R.A.P.

1113.  We therefore conclude and hold that Mattis's <u>Brady</u> claim is procedurally defaulted.").

Such a failure to raise an issue in a PAA (formerly known as an "allocatur petition") constitutes

waiver under the law of the state.  <u>See</u> Pa. R.A.P. No. 1115; <u>Grimaud v. Dep't of Environmental</u>

<u>Resources,</u> 638 A.2d 299 (Pa. Cmwlth. 1994)(issue waived where not raised in a petition for

allowance of appeal);  <u>Pelzer v. Vaughn</u>, No. Civ.A.  92-0091, 1992 WL 95915, at *5 (E.D. Pa.

April 16, 1992) ("If an issue has once been raised [in the state court of first instance], but was not

pursued to the higher courts, it is deemed waived, and further litigation on that issue will not be

heard [in a federal habeas court] unless a petitioner can demonstrate cause and actual prejudice,

or show that failure to consider the claims would result in a fundamental miscarriage of justice.

Here, petitioner waived this claim by not pursuing it the first time he raised it, in his first PCHA

petition.   He tried to avoid this waiver by claiming ineffective assistance of his first PCHA

counsel in his third PCHA petition, yet that issue was waived as well, by not having been raised

in his petition for leave to appeal to the state supreme court.") (citations omitted).

It appears that the rule of waiver for failing to present an issue in a petition for allowance

of appeal had been consistently applied at least since 1983 and up to and beyond the time

Petitioner failed to file his PAA during the first PCRA proceedings, i.e., February - March 1998,

so as to render the rule "adequate" within the contemplation of federal habeas law.  <u>See</u>, <u>e.g.</u>, <u>In</u>

<u>re T.J.</u>, 739 A.2d 478, 481 n. 3 (Pa. Sept. 29, 1999)(applying rule of waiver where litigant did not

file a petition for allowance of appeal);[5]   <u>Beaty v. Patton</u>, 700 F.2d 110, 111-12 (3d Cir.1983)

---

[5]  It was not until May 9, 2000, that the Pennsylvania Supreme Court promulgated a rule entitled
"In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases" No.  218 Judicial
Administration Docket No. 1 which provided that

(continued...)

("Beaty's failure to file a petition for allocatur in the Pennsylvania Supreme Court constitutes a procedural default that deprived the highest state court of an opportunity to consider his constitutional claims."); Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001)(where federal habeas petitioner's failure to file an allocatur petition occurred in April-May 1991, the Court of Appeals found such to constitute a procedural default for habeas purposes, noting that "[o]ur court has previously held that a petition for allowance of appeal is an available remedy in Pennsylvania, and we have held that claims were not exhausted or were procedurally defaulted

---

[5](...continued)

AND NOW, this 9th day of May, 2000, we hereby recognize that the Superior Court of Pennsylvania reviews criminal as well as civil appeals. Further, review of a final order of the Superior Court is not a matter of right, but of sound judicial discretion, and an appeal to this Court will only be allowed when there are special and important reasons therefor. Pa.R.A.P. 1114. Further, we hereby recognize that criminal and post-conviction relief litigants have petitioned and do routinely petition this Court for allowance of appeal upon the Superior Court's denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus relief.

In recognition of the above, we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief.

This Order shall be effective immediately.

In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam). This order has been published at 561 Pa. CXXXVIII. See also William P. Murphy, State High Court Signals Sea Change in Federal Habeas, PENNA. LAW WEEKLY, May 29, 2000, at 12.

It is clear that the rule does not apply to cases, such as this one, wherein the time for filing a petition for allowance of appeal expired prior to May 9, 2000, the effective date of the rule. Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001) ("we hold that Order 218 does not apply in cases in which the time to petition for review by the state supreme court expired prior to the date of the order.").

Hence, at the time petitioner failed to file his petition for allowance of appeal, circa February - March 1998, the Pennsylvania rule that an issue not raised in such a petition is waived, was regularly and consistently applied, thus permitting a federal habeas court to conclude that failure to comply with the rule constituted a procedural default. Thus, Petitioner's implication that he need not have filed a PAA is simply wrong. See Dkt. [4] at 11, ¶ 13.

because such review was not sought.")(citations omitted).

Moreover, Pennsylvania's rule of waiver for failing to raise an issue on appeal is "independent" of any federal law question. See, e.g., Diventura v. Stepniak, No. 95-CV-0443, 1996 WL 107852, at *3 (E.D. Pa. March 11, 1996)(finding state court's application of the waiver rule pursuant to Commonwealth v. Laskaris, 595 A.2d 1229 (Pa. Super. 1991) to be "independent" of federal law). Hence, Petitioner's waiver under state law constitutes a procedural default for purposes of seeking federal habeas relief. As such, unless there is some allegation or evidence of cause for and prejudice from the failure to properly raise the federal issue in the state courts or unless Petitioner can show a miscarriage of justice, Petitioner's claim is now barred.

Petitioner makes no allegation of cause for the default and in fact, on this record, there is no apparent cause for such a default. See, e.g., Smith v. Vaughn, No. Civ.A. 96-8482, 1997 WL 338851, at *5 (E.D. Pa. June 17, 1997)("Thus, because petitioner has not made any allegations or presented any evidence demonstrating cause and prejudice for his default or demonstrating that failure to consider count XI would result in a fundamental miscarriage of justice, the court cannot grant federal habeas review of count XI."). Indeed, although ineffective assistance of counsel in violation of the Sixth Amendment may constitute cause in the proper case, the only claim of ineffectiveness of counsel available now to Petitioner herein is ineffective assistance of Attorney Defazio in his failure to file a PAA in the Pennsylvania Supreme Court from the Superior Court's disposition of Petitioner's first PCRA petition. However, such a claim of ineffective assistance does not constitute "cause" given that there is no federal constitutional right to counsel in state collateral relief, Werts v. Vaughn, 228 F.3d at 189 n.4, and, therefore, no federal constitutional right to effective assistance of counsel in post-conviction proceedings. See Coleman v.

Thompson, 501 U.S. 722, 757 (1991) ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas."); Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under Coleman, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel"). Thus, even assuming that Petitioner received ineffective assistance of counsel in his post conviction relief proceedings, such ineffectiveness simply fails to constitute "cause."[6] Hence, having failed to show "cause", the only other avenue of overcoming the procedural default doctrine is for Petitioner to show a fundamental miscarriage of justice.

However, even though Petitioner baldly alleges a fundamental miscarriage of justice would occur if this court did not entertain his claims, on this record, Petitioner cannot meet his burden to establish actual innocence, especially in light of his plea of guilt and in the absence of any new evidence of actual innocence.[7]

As for the issues raised by Petitioner in the state habeas petition, treated as a second

---

[6] Because Petitioner has not shown "cause" the court need not address whether he suffered prejudice. Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 762 (3d Cir. 1996) ("Because Moscato cannot show cause, we need not address the question of actual prejudice.").

[7] See, e.g., Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001) (setting forth requirement that to establish actual innocence, a federal habeas petitioner must produce new evidence of such actual innocence); Simpson v. Sparkman, 172 F.3d 49 (Table), 1998 WL 869967, at (6th Cir. 1998)("Therefore, the burden is on the defendant at this stage to make "a colorable showing of factual innocence" in order to be entitled to the "fundamental miscarriage of justice" exception"). There is one exception to the requirement of presenting new evidence in order to establish a miscarriage of justice. See United States v. Garth, 188 F.3d 99 (3d Cir. 1999) (essentially not requiring new evidence to be provided in the context of a claim that the Petitioner was actually innocent of the crime of using or carrying a gun in light of the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995) redefining those statutory terms). However, for reasons explained in Sweger v. Chesney, 294 F.3d 506, 523 n.18 (3d Cir. 2002) and Gale v. Rozum, NO. 06-CV-1266, 2006 WL 2092572 (M.D. Pa. July 25, 2006), the narrow Garth exception does not apply here. Whereas in Garth a subsequent interpretation of a criminal statute by the United States Supreme Court may have rendered the petitioner therein not guilty of the crime, no such factual scenario is present here.

PCRA petition and dismissed as time barred by the Superior Court and as for the issues raised by Petitioner in the third PCRA petition, which likewise was time barred, (and assuming that those issues are the same issues as Petitioner raises herein), the Court finds that Petitioner procedurally defaulted those claims raised in those petitions because the PCRA's time bar is an adequate and independent state law rule.

The state courts found that petitioner's first and second PCRA petitions were time barred under state law. It appears that as of March 17, 1998, when he filed his second PCRA petition (i.e. the state habeas corpus petition treated as a PCRA petition) and as of April 11, 2000, when he filed his third PCRA petition and when Petitioner is deemed to have committed his procedural defaults, i.e., failed to timely file his PCRA petitions, the state courts regularly and consistently applied the PCRA statute of limitations so as to render it an "adequate" state law ground, even if its jurisdictional nature was not made clear and its consistency in death penalty cases was not clear until 1999. See, e.g., Banks v. Horn, 49 F.Supp.2d 400 (M.D.Pa. 1999)(holding that the State Supreme Court's refusal to consider a death sentenced PCRA petitioner's claims because his PCRA petition was untimely constituted a procedural default barring federal habeas review and that the PCRA's statute of limitations and its application by the state Courts was independent and adequate); Catanch v. Larkins, No. 98-85, 1999 WL 529036 (E.D. Pa. July 23, 1999) (holding certain claims which were not otherwise exhausted had been procedurally defaulted because the claims could not be brought under a second PCRA petition as that petition would be time barred and that the State courts apply the PCRA statute of limitations consistently, thus rendering it an adequate and independent state law ground); Holland v. Horn, 150 F.Supp.2d 706 (E.D. Pa. 2001); Commonwealth v. Barrett, 761 A.2d 145 (Pa. Super. 2000)(applying the PCRA time bar to a PCRA petition filed July 1998). The PCRA time bar is also independent.

Moreover, there does not appear to be either cause or prejudice for the procedural default, i.e., for failing to bring a timely PCRA petition.[8] Furthermore, as noted above Petitioner cannot, on this record, demonstrate a miscarriage of justice. Accordingly, his petition should be dismissed because he has procedurally defaulted all of his claims.

Lastly, it is recommended that a certificate of appealability be denied, as jurists of reason would not find it debatable whether this petition is time barred and/or procedurally defaulted.

III.    Conclusion

For the above-stated reasons, the petition filed pursuant to 28 U.S.C. § 2254 should be dismissed as time barred and/or as procedurally defaulted and a certificate of appealability should be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge

Dated: 24 April, 2009

cc:    The Honorable Terrence F. McVerry
       United States District Judge

       Charles Poindexter

---

[8]  While in his traverse, Petitioner attempts to argue cause as being the lack of transcripts, Dkt. [21] at 7, as made abundantly clear in the discussion of the time bar, such lack of transcripts cannot establish cause for the late filing of his second and third PCRA petitions given that he timely filed his first PCRA petition without such transcripts.

CL1936
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654

All counsel of record via CM-ECF